Anthony P. La Rocco
George P. Barbatsuly
**K&L GATES LLP**
One Newark Center, Tenth Floor
Newark, New Jersey 07102
(973) 848-4000
Attorneys for Plaintiffs
Clover Health Investments Corp., and
Clover Health LLC

| | |
|---|---|
| CLOVER HEALTH INVESTMENTS CORP., AND CLOVER HEALTH LLC, | Civil Action No. *18 – 16802* |
| Plaintiff, | **COMPLAINT** |
| v. | **Filed Under Seal** |
| ZOE FARRELL, | |
| Defendant. | |

1.     Plaintiffs Clover Health Investment Corp. and Clover Health LLC (collectively, "Plaintiffs" or "Clover") assert claims against Defendant Zoe Farrell ("Defendant" or "Farrell") for breach of contract, trespass, breach of the common law duty of loyalty, and for violations of the New Jersey's Computer Related Offenses Act, N.J.S.A. 2A:38A-1, *et seq.*, New Jersey Trade Secrets Act, N.J.S.A. 56:15-1, *et seq.*, and the federal Defend Trade Secrets Act, 18 U.S.C. § 1836 *et seq.*

2.     Clover seeks damages and injunctive relief to prevent Farrell from disclosing or misusing documents, data, confidential information, trade secrets, and other valuable information and intellectual property stolen from Clover.   The misuse and risked disclosure of valuable Clover property stems, in part, from mass downloads of highly sensitive information by Farrell following a discussion with her supervisor about termination.

## JURISDICTION

3.     This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332(a), as this is a civil action between citizens of different states, and the amount in controversy (including the value of the equitable relief sought herein) well exceeds $75,000, exclusive of attorneys' fees, costs, and interest.

4.     This Court also has jurisdiction over this matter pursuant to 28 U.S.C. § 1331, as Clover asserts claims against Farrell under the Defend Trade Secrets Act, 18 U.S.C. § 1836 *et seq*.

5.     This Court has personal jurisdiction over Defendant because she resides in this judicial district; because, at all times material hereto, she transacted business activities in this judicial district; there is the requisite nexus between these business activities and this action; and Defendant engaged in substantial and not isolated activity within this judicial district.

6.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2), because a substantial part of the events which gave rise to the Complaint occurred in this district.

## THE PARTIES

7.     Clover Health Investment Corp. is a Delaware corporation that maintains its principal place of business in San Francisco, California.

8.     Clover Health LLC is a limited liability company whose sole member is Clover Health Corp., a Delaware corporation that maintains its principal place of business in San Francisco, California.

9.     Farrell is a citizen of the State of New Jersey and resides in Jersey City, New Jersey.

## FACTS

10.     Clover is a leading provider of Medicare Advantage plans and is in the business of aligning with physicians to improve health care, using patient-centered analytics and a care management team to identify potential risks a member may face, and directly providing preventive care.

11.     Clover is a privately held company that develops, integrates, and supports its own software applications since its inception in 2013.  The know-how and development of Clover's software, programs, and markets is the result of

careful, hard work by its employees at tremendous monetary cost and expenditure of man-hours over several years.

12.    As a Medicare Advantage PPO insurance provider, in order to offer its services to potential clients (individuals), Clover must develop a network of medical providers in applicable geographic areas. Clover must obtain a sufficient number of overall providers, as well as providers in applicable areas (e.g., cardiology, internal), to meet "adequacy" requirements established by the Centers for Medicare and Medicaid Services ("CMS"). As such, the process of identifying a geographic market to move into is about a two-year process. First, the Company identifies the market and then attempts to get providers on board. Then, once the Company meets the "adequacy" requirements for that area, it will apply with CMS to provide coverage in that area. Thus, a competitor would be greatly advantaged if it learns that Clover is attempting to move into a market, or that it has (or has not) been able to obtain the minimum number of providers.

13.    Clover's intellectual property, confidential information, documents, and trade secrets are of the utmost importance to Clover and, as such, Clover takes reasonable measures to protect those assets.    Clover employs confidentiality agreements with its employees, password-protected computer systems with layers of access to sensitive information.

14.     Farrell began her employment with Clover on or about April 2018 in the position of Director of Network Management at one of Clover's offices in Jersey City, New Jersey. In that position, she was responsible for representing Clover before third-parties with respect to provider-payor relations.

15.     In or around August 2018, Farrell was transitioned into a new role in charge of Live Network Markets and Operations, which was more operational in nature and less focused on sales.

16.     By virtue of her employment with Clover, Farrell was entrusted with access to intimate and detailed knowledge about Clover and its business, including but not limited to its Clover Assistant (a program Clover created and designed), business plans, client leads and referral sources, and marketing and sales strategies. All of this information constitutes trade secrets and/or confidential and proprietary business information belonging to Clover and, thus, is properly protectable.

17.     In an effort to protect its trade secrets and confidential and proprietary information as well as its legitimate business interests, Clover required Farrell, as a condition of her employment, to enter into an Employee Covenants Agreement ("Agreement").

18.     In this Agreement, among other things, Farrell expressly agreed as follows with respect to Confidential Information, as defined in the Agreement,

(a)     I will use it only in the performance of my duties for the Company. I will not use it at any time (during or after my

-5-

employment) for my personal benefit, for the benefit of any other person or firm, or in any manner adverse to the interests of the Company or its affiliates;

(b)   I will not disclose it at any time (during or after my employment) except to authorized Company personnel, unless the Company expressly consents in advance in writing or unless the information becomes clearly of public knowledge or enters the public domain (other than through an unauthorized disclosure by me or through a disclosure not by me which I knew or reasonably should have known was an unauthorized disclosure);

(c)   I will safeguard it by all reasonable steps and abide by all policies and procedures of the Company and its customers in effect from time to time regarding storage, copying, destroying, publication or posting, or handling of such Confidential Information, in whatever medium or format that Confidential Information takes;

. . . .

(e)   I will return all materials containing or relating to Confidential Information, together with all other Company or customer property . . . . to the Company, when my employment with the Company terminates or otherwise on demand and, at the time I will certify to the Company, in writing, that I have complied with this Agreement. I shall not retain any copies or reproductions of correspondence, memoranda, reports, notebooks, drawings, photographs, or other documents relating in any way to the affairs of Company, its customers or its or their respective affiliates . . . .

19.   The Agreement defines "Confidential Information" to include the

following information developed or acquired by Farrell relating to Clover, "its

business, potential business or that of its customers or its or their respective

affiliates"

all trade secrets, know-how, show-how, technical, operating, financial, and other business information and materials, whether or

-6-

not reduced to writing or other medium and whether or not marked or labeled confidential, proprietary or the like, specifically including, but not limited to, information regarding source codes, software programs and applications in various stages of development, computer and information systems, data structures, data reporting methodologies, research and development, new materials research, logos, designs, graphics, writings or other materials, algorithms, formulae, works of authorship, techniques, discoveries, documentation, models and systems, sales and pricing plans, proposals, projections and techniques, profit margins, business and operational plans and strategies, procedures, inventions, products, improvements, modifications, methodology, processes, concepts, records, files, memoranda, reports, plans, proposals, price lists, pricing policies, pricing algorithms, vendor, customer and supplier lists, privacy and security practices, sales account plans, sales force activity information, acquisition, expansion, marketing financial and other business information and existing and future products and business plans of the Company, and actual and prospective customer and supplier information.

20.   Moreover, in the Agreement, Farrell expressly acknowledges that, in the event of any breach or threatened breach of the Agreement by her, Clover "shall be entitled to petition a court of competent jurisdiction for temporary, preliminary and permanent injunctive or other equitable relief in any court of competent jurisdiction (without being obligated to post a bond or other collateral) and to an equitable accounting of all earnings, profits and other benefits arising, directly or indirectly, from such violation, which rights shall be cumulative and in addition to (rather than instead of) any other rights or remedies to which the Company may be entitled at law or in equity."

21.    Farrell also committed to not using or disclosing Clover's confidential or proprietary information outside the scope of her work in the company's Confidential Information policy in its Employee Handbook, which Farrell acknowledged on September 13, 2018.

22.    Clover maintains a password-protected computer system through which its employees conduct its business. Much of the data contained on Clover's computer system is confidential and cannot be obtained from other sources.

23.    As an employee of Clover, Farrell was provided access to Clover's password-protected computer system. Pursuant to Clover's Computer Usage Policy, the access provided to Farrell was for the purpose of carrying out her job duties. Farrell was generally not authorized to utilize Clover's computer system for any purpose other than the performance of her job duties. While Clover allows employees to engage in reasonable personal use of the laptops it provides and its computer systems, it does not authorize employees to transfer confidential Clover data outside the company for any purpose other than for Clover business.

24.    On November 21, 2018, Farrell was approached about terminating her employment and invited to enter into discussions regarding a separation package. Clover informed Farrell that Clover intended to have Farrell to stay on as an employee through the end of 2018, during which time she was expected to

continue performing her job duties, and would retain access to Clover's password-protected computer systems.

25.     After November 21, 2018, Farrell started downloading, deleting, and manipulating massive amounts of Clover's documents.

26.     On Friday, November 23, 2018, the day after the Thanksgiving holiday when the company was closed, she deleted approximately 120 files between 9:04 p.m. and 10:11 p.m. and then downloaded approximately 742 files to one or more external storage devices at 11:06 p.m. On that day, she also saved to PDF approximately 79 e-mail files at 9:40 p.m., for the purpose of downloading these e-mail files to external storage drives.  She also changed the properties of 4 files at 11:08 p.m. so that they were no longer accessible to others at the company.

27.     On Saturday, November 24, 2018, when the company was closed, Farrell also downloaded approximately 918 files between 4:17 a.m. and 4:33 a.m.

28.     By comparison, between November 19 and 21, 2018, days when she was working, Farrell only downloaded a total of 10 files.

29.     Farrell was not authorized to delete, download, remove access to, or save to PDF Clover's documents for any purpose other than for purposes of her employment with Clover. As Farrell had remote access to Clover's documents, there would have been no reason for her to download these items or convert them to PDF unless for an unauthorized and improper purpose.

30.     The amount of data that Farrell downloaded and manipulated over the course of two days during the Thanksgiving weekend is staggering -- more than 1,700 electronic files downloaded to one or more external storage drives.

31.     All of this information that Farrell misappropriated is extremely confidential and proprietary information belonging to Clover. It includes, among other things:  (a) Lists of health care providers under contract with Clover (i.e., customer lists); (b) Non-public information regarding the Clover Assistant program; (c) confidential analyses of Clover's target markets and market saturation; (d) confidential information regarding contracts and letters of intent; (e) Internal Clover policies and procedures; (f) provider manuals; (g) credentialing information; and (h) marketing plans.

32.     Through her actions, Farrell has compromised Clover's ability to review and control access to more than 1,700 of its confidential and proprietary data files.

33.     Clover has incurred monetary damages as a result of Farrell's actions, including but not limited to impairment of the integrity of its data, programs, systems, and/or information contained in Clover's password-protected computer systems, as well as costs spent investigating and remedying Farrell's conduct, including attorneys' fees, costs, and other resources.

34.    Clover also stands to suffer irreparable harm unless Farrell is directed to return the data she wrongfully took from Clover. It is highly likely that Farrell plans to use, or is using, the Clover confidential information that she surreptitiously obtained for her personal benefit and/or the benefit of unauthorized third parties.

35.    The information Farrell appropriated would be extremely valuable in the hands of a competitor in the healthcare industry, as it would allow the competitor to replicate significant aspects of Clover's business model and strategy. For example, should Farrell disclose to Clover's competitors Clover's target markets or saturation in any given market, the outcome could be disastrous. Likewise, if Clover's competitors were given access to information about how Clover's internally-developed Clover Assistant program operates, such a competitor would be able to unfairly compete with Clover by skipping over many years and tens of millions of dollars spent on developing the program.

36.    Unless Farrell is restrained and enjoined from any further appropriation and misuse of Clover's confidential and proprietary information and its trade secrets, Clover will suffer immediate, substantial, and irreparable injury. Such injury includes the continued disruption of Clover's business; lost customers, business, and profits that may be diverted from Clover; and further

-11-

misappropriations of Clover's confidential, proprietary, and trade secret information.

## COUNT I

## BREACH OF CONTRACT

37.     Clover incorporates by reference each of the allegations in the preceding paragraphs as if fully set forth herein.

38.     The foregoing conduct constitutes, and will continue to constitute, breaches of the express and implied contracts entered into by Farrell, including the Employee Covenants Agreement.

39.     As a result of the foregoing, Clover has been injured, for which it is entitled to equitable relief in the form of a permanent injunction against Farrell; such compensatory damages as may be proven at trial; punitive damages in such amount as the proofs at trial may warrant; together with interest, attorneys' fees, and costs.

40.     Farrell's wrongful conduct is causing, and will cause, immediate, substantial and irreparable harm to Clover. Clover has no adequate remedy at law to protect its business and property rights and is suffering, and will continue to suffer, irreparable injury unless Farrell is retrained and enjoined from the wrongful conduct as described above.

## COUNT II

## TRESPASS

41.     Clover incorporates by reference each of the allegations in the preceding paragraphs as if fully set forth herein.

42.     By virtue of her status and employment position at Clover, and her access to Clover's trade secrets and confidential and proprietary business information belonging to Clover, Farrell owed, and continues to owe, a common law duty of loyalty to Clover.

43.     By deleting, downloading, removing access to, and saving to PDF extremely confidential and proprietary information from Clover's computer systems belonging to Clover, without authorization, Farrell engaged in actionable trespass to property belonging to Clover.

44.     As a result of the foregoing, Clover has been injured, for which it is entitled to equitable relief in the form of a permanent injunction against Farrell; such compensatory damages as may be proven at trial; punitive damages in such amount as the proofs at trial may warrant; together with interest, attorneys' fees, and costs.

45.     Farrell's wrongful conduct is causing, and will cause, immediate, substantial and irreparable harm to Clover. Clover has no adequate remedy at law to protect its business and property rights and is suffering, and will continue to

suffer, irreparable injury unless Farrell is retrained and enjoined from the wrongful conduct as described above.

## COUNT III

### BREACH OF DUTY OF LOYALTY

46.    Clover incorporates by reference each of the allegations in the preceding paragraphs as if fully set forth herein.

47.    By virtue of her status and employment position at Clover, and her access to Clover's trade secrets and confidential and proprietary business information belonging to Clover, Farrell owed, and continues to owe, a common law duty of loyalty to Clover.

48.    By deleting, downloading, removing access to, and saving to PDF extremely confidential and proprietary information from Clover's computer systems belonging to Clover, without authorization, and using this information for her personal benefit and/or the benefit of unauthorized third parties, Farrell violated her duty of loyalty to Clover.

49.    As a result of the foregoing, Clover has been injured, for which it is entitled to equitable relief in the form of a permanent injunction against Farrell; such compensatory damages as may be proven at trial; punitive damages in such amount as the proofs at trial may warrant; together with interest, attorneys' fees, and costs.

50.     Farrell's wrongful conduct is causing, and will cause, immediate, substantial and irreparable harm to Clover. Clover has no adequate remedy at law to protect its business and property rights and is suffering, and will continue to suffer, irreparable injury unless Farrell is retrained and enjoined from the wrongful conduct as described above.

## COUNT IV

## MISAPPROPRIATION OF CONFIDENTIAL INFORMATION AND TRADE SECRETS

51.     Clover incorporates by reference each of the allegations in the preceding paragraphs as if fully set forth herein.

52.     Farrell has wrongfully misappropriated, retained, used, and/or disclosed Clover's confidential and proprietary information and trade secrets in violation of applicable law.

53.     As a result of the foregoing, Clover has been injured, for which it is entitled to equitable relief in the form of a permanent injunction against Farrell; such compensatory damages as may be proven at trial; punitive damages in such amount as the proofs at trial may warrant; together with interest, attorneys' fees, and costs.

54.     Farrell's wrongful conduct is causing, and will cause, immediate, substantial and irreparable harm to Clover. Clover has no adequate remedy at law to protect its business and property rights and is suffering, and will continue to

suffer, irreparable injury unless Farrell is retrained and enjoined from the wrongful conduct as described above.

## COUNT V

### VIOLATION OF N.J.S.A. 2A: 38A-1, *ET. SEQ.,*
### NEW JERSEY COMPUTER RELATED OFFENSES ACT

55.    Clover incorporates by reference each of the allegations in the preceding paragraphs as if fully set forth herein.

56.    Farrell purposefully and/or knowingly took data from Clover's computer system, in violation of N.J.S.A. 2A:38A-3(a).

57.    Farrell purposefully and/or knowingly and without authorization accessed Clover's computer system in violation of N.J.S.A. 2A: 38A-3(b).

58.    Farrell purposefully and/or knowingly accessed and recklessly obtained data from Clover's computer system, in violation of N.J.S.A. 2A:38A-3(e).

59.    As a result of the foregoing, Clover has been injured, for which it is entitled to equitable relief in the form of a permanent injunction against Farrell; such compensatory damages as may be proven at trial, including but not limited to the costs of investigation and remediation; punitive damages in such amount as the proofs at trial may warrant; together with interest, attorneys' fees, and costs.

60.    Farrell's wrongful conduct is causing, and will cause, immediate, substantial and irreparable harm to Clover. Clover has no adequate remedy at law

to protect its business and property rights and is suffering, and will continue to suffer, irreparable injury unless Farrell is retrained and enjoined from the wrongful conduct as described above.

## COUNT VI

## VIOLATION OF N.J.S.A. 56:15-1, *ET SEQ.*, NEW JERSEY TRADE SECRETS ACT

61.     Clover incorporates by reference each of the allegations in the preceding paragraphs as if fully set forth herein.

62.     Farrell deleted, downloaded, removed access to, and saved to PDF information from Clover's computer systems belonging to Clover using improper means within the meaning of N.J.S.A. 56:15-1, et seq.

63.     The information belonging to Clover that Farrell deleted, downloaded, removed access to, and saved to PDF was a trade secret within the meaning of N.J.S.A. 56:15-1, et seq.

64.     By deleting, downloading, removing access to, and saving to PDF extremely confidential and proprietary information from Clover's computer systems belonging to Clover, without authorization, Farrell willfully and maliciously engaged in misappropriation of a trade secret in violation of N.J.S.A. 56:15-1, et seq.

65.     As a result of the foregoing, Clover has been injured, for which it is entitled to equitable relief in the form of a permanent injunction against Farrell;

such compensatory damages as may be proven at trial; punitive damages in such amount as the proofs at trial may warrant; together with interest, attorneys' fees, and costs.

66.   Farrell's wrongful conduct is causing, and will cause, immediate, substantial and irreparable harm to Clover. Clover has no adequate remedy at law to protect its business and property rights and is suffering, and will continue to suffer, irreparable injury unless Farrell is retrained and enjoined from the wrongful conduct as described above.

## COUNT VII

## MISAPPROPRIATION OF TRADE SECRETS UNDER
## 18 U.S.C. § 1836, ET SEQ.

67.   Clover incorporates by reference each of the allegations in the preceding paragraphs as if fully set forth herein.

68.   Clover owns and possesses certain confidential, proprietary, and trade secret information, as alleged above.

69.   Clover's confidential, proprietary, and trade secret information relates to products and services used, sold, shipped and/or ordered in, or intended to be used, sold, shipped and/or ordered in, interstate or foreign commerce.

70.   Clover has taken reasonable measures to keep such information secret and confidential.

71.   As a result of these security measures, Clover's confidential and

proprietary trade secret information is not available for others to use through any legitimate means.

72.     Clover's confidential, proprietary, and trade secret information derives independent economic value from not being generally known to, and not being readily ascertainable through proper means by, another person who could obtain economic value from the disclosure or use of the information.

73.     In violation of Clover's rights, Farrell misappropriated Clover's confidential, proprietary and trade secret information in the improper and unlawful manner as alleged herein. Farrell's misappropriation of Clover's confidential, proprietary, and trade secret information was intentional, knowing, willful, malicious, fraudulent, and oppressive.

74.     If Farrell is not enjoined, Farrell will continue to misappropriate Clover's trade secret information.

75.     As a result of the foregoing, Clover has suffered – and if Farrell's conduct is not stopped, will continue to suffer – severe competitive harm, irreparable injury, and significant damages, in an amount to be proven at trial.

76.     Because Clover's remedy at law is inadequate, Clover seeks, in addition to damages, temporary, preliminary, and permanent injunctive relief to recover and protect its confidential, proprietary, and trade secret information and to protect other legitimate business interests. Clover will continue suffering

-19-

irreparable harm absent injunctive relief.

**WHEREFORE**, Plaintiffs respectfully request that judgment be made and entered in its favor, as follows:

77.     Granting the restraints and preliminary injunctive relief requested in Clover's proposed Order to Show Cause;

78.     Granting Clover permanent injunctive relief, prohibiting Farrell without authorization from Plaintiffs from obtaining, copying, using, or disclosing any of the information, data, and/or documents (in electronic or any other form) removed by her or copied by her, and directing her to return to Clover all such information, data and/or documents;

79.     Compensatory damages and losses to be proved at trial;

80.     Punitive damages;

81.     Costs of suit, including attorneys' fees and the costs of investigation and litigation;

82.     Any other relief deemed proper, together with costs and expenses.

Respectfully submitted,

**K&L GATES LLP**

One Newark Center, Tenth Floor
Newark, New Jersey 07102

By: /s/ Anthony P. La Rocco_____
      Anthony P. La Rocco

Attorneys for Plaintiffs
Clover Health Investments Corp., and
Clover Health LLC

Dated:  December 4, 2018

## <u>CERTIFICATION UNDER L. CIV. R. 11.2</u>

I certify that the matter in controversy is not the subject matter of any other action pending in any court or of any pending arbitration or administrative proceeding.

Respectfully submitted,

**K&L GATES LLP**

One Newark Center, Tenth Floor
Newark, New Jersey 07102

By: /s/ Anthony P. La Rocco
            Anthony P. La Rocco

Attorneys for Plaintiffs
Clover Health Investments Corp., and
Clover Health LLC

Dated:  December 4, 2018

## CERTIFICATION UNDER L. CIV. R. 201.1

I certify that the matter in controversy is not eligible for compulsory arbitration because the damages recoverable by Plaintiffs exceed the sum of $150,000, exclusive of interest and costs.

Respectfully submitted,

**K&L GATES LLP**

One Newark Center, Tenth Floor
Newark, New Jersey 07102

By: /s/ Anthony P. La Rocco _____
       Anthony P. La Rocco

Attorneys for Plaintiffs
Clover Health Investments Corp., and
Clover Health LLC

Dated:  December 4, 2018